Choctaw, Oklahoma & Gulf Railroad Company *v.* Ingram.

Opinion delivered May 16, 1903.

Railway—Killing of Horse—Contributory Negligence.—Where an employee in charge of plaintiff's horses voluntarily turned them loose where he knew they would probably cross a railway track at a time when he could see or hear a train approaching, and one of the horses was thereupon killed in attempting to cross the track, he was guilty of contributory negligence.

Appeal from Perry Circuit Court.

Robert J. Lea, Judge.

Reversed.

STATEMENT BY THE COURT.

The complaint alleged that on the 28th day of June, 1900, in Perry county, Arkansas, the defendant's west-bound passenger train was so negligently and carelessly run that it ran over and killed one horse, of the value of $125, the property of the plaintiff, and prayed judgment for that amount.

The answer specially denied the allegation of the complaint, and alleged that, if the plaintiff's horse was killed or injured, it was due to the carelessness and contributory negligence of plaintiff himself, or his servants and employees.

B. F. Ingram testified that he was present about the 28th of June, when the horse was hurt; it was hurt by the passenger train going west; the horse was worth $100 or $125; the horse was struck right at the railroad crossing at the depot at Ledwidge; the horse was going north across the track to the feed lot, and the train ran up there, hit the horse, and knocked him off the track; the train was running at good speed; it ran up too far, and backed up two

or three car lengths. This was about 4 o'clock in the evening. The horse belonged to witness' brother, J. H. Ingram. On cross-examination he stated that there is a big hill there, and the horse was struck right at the foot of the hill. There is a bridge about 30 feet high about 100 feet from the platform. Mr. Duke had been working the horse, and had turned the horse loose upon the hill. Witness did not know just where he turned the horse loose; but, if it had been at the top of the hill, it would have been 200 or 300 yards from where the accident happened. Witness saw the horse run on to the track, but did not see it struck. His view was shut off from the train when it struck the horse by the seedhouse, but he saw the horse going down the hill, and heard the train approaching. Witness did not know whether the horse ever got on the track or not, but he found a shoe where he thought it had been knocked off on the track. Witness did not hear the train whistle as it approached the station.

John Reed testified that the horse was worth $90. Henry Duke had been using the horse to haul lumber. The horses were fed at the saloon across the track towards the river. He did not know where Duke was at the time of the accident. The horse came on to the track from the left hand side. The engineer was on the right hand side of the engine. He did not know whether the fireman was on the seat on the left side or not. On cross-examination he stated that Duke was driving the team, and the wagon broke down at the foot of the hill not very far from the railroad. From where the wagon broke down a person could see up the railroad track for some distance. He did not know what Duke did after the wagon broke down, but the last he noticed him he was at the wagon just a few minutes before the train came up. Witness swore positively that the train blew for the station, and that Duke was at that time in charge of the horses with the horses unhitched from the wagon. Duke could have seen the train up the track at that time. About the time the train whistled, Duke and the horses were right at the foot of the hill, about 75 or 80 yards from the track. One of the horses crossed the track immediately in front of the engine.

B. F. Conley testified that he was a locomotive engineer in the service of defendant company; was engineer of the train that struck the animal in question. The train was a passenger going west. As witness approached the station of Ledwidge, he saw the horse standing on a little incline on the south side of the track unhitched from

the wagon, with a man holding him by the rein. He judged the horse was about 100 feet from the track at that time. He saw the horse until the front end of his engine obstructed his view. The horses were on the left and south side of the track, and he was on the right or north side of the engine, and the front end of the engine prevented him from seeing the horse as he got closer to it. Before he came to a stop the gray horse went across in front of the engine, dragging a part of the harness. At the time the horse passed out of his view, the man was still holding them, and had control of them. Witness did not see the sorrel horse (the one that was struck) until after the accident. The gray horse went right over the nose of the pilot, and got across in front of the engine. The fireman at the time of the accident was in the deck of the engine putting in a fire. The track was straight, so that witness could see it as well as the fireman could have seen it, and it was necessary for the fireman to be firing at that time. On account of the grade of coal they were using, it was necessary to build up the fire when the engine was not using steam, and the steam had been shut off from the engine in approaching the station.

The defendant asked the court to give the two following instructions, which the court refused to give, and defendant excepted.

"1. The jury are instructed to return a verdict for the defendant.

"2. The jury is instructed that, if they find that the man Duke was in charge of the horse in controversy on the day the injury occurred, was familiar with the time said passenger train was due at Ledwidge, and knew that, by turning said horse loose to go to the feed lot, the horse must cross the railroad track at about the time of the arrival of the train which struck him, and did so turn said horse loose, and if you further find that said Duke was acting as an employee or agent or servant of the plaintiff in the management of said horse at the time of the injury, and that his so turning said horse loose at said time contributed to the injury, then you will return a verdict for the defendant."

The jury returned for the plaintiff a verdict for $70. Saving all exceptions, the defendant appealed to this court.

*J. W. McLoud* and *E. B. Pierce*, for appellant.

The defendant owed no duty to stock which might come upon the track to stop its train at any station. 53 Ark. 96; 66 Ark. 439;

67 Ark. 514; 64 S. W. 1089.   Contributory negligence is a defense to this action.   57 Ark. 141.

*Sam Frauenthal,* for appellee.

There was an utter lack of care in handling the train and of avoiding the accident.   64 Ark. 236; 66 Ark. 363; 68 Ark. 32; 57 Ark. 192.   A lookout should have been kept on the fireman's side.   62 Ark. 182; 64 Ark. 286.   The fact of his putting coal in the engine is no excuse.   63 Ark. 177.  ·Unless the railway company used ordinary care to avoid the injury, contributory negligence is no defense.   37 Ark. 362.

HUGHES, J., (after stating the facts).   We are of the opinion that the court erred in refusing to give to the jury instruction numbered two asked for by the defendant, which proposed to submit to them for determination the question whether the plaintiff had been guilty of contributory negligence.

If the man Duke was in charge of the horses, and could hear or see the train coming to the depot, and knew that the horses would probably cross the track at the crossing leading to the place where they usually fed, which the proof tends to show, and voluntarily turned them loose, and one of them was killed by the train in attempting to cross the track, this would be negligence contributing to the injury, and would bar recovery for it, although the railroad company was guilty of negligence.   Whether the man Duke in charge of the horses voluntarily turned them loose, or whether they were frightened by the approach of the train, and he was obliged to let them go, the evidence does not plainly show. Duke did not testify in the case.   There is evidence that tends to show that he voluntarily turned them loose, and we are of the opinion that the question should have been submitted to the jury, and that the instruction numbered 2 asked for by the defendant was proper, and should have been given.   For error in refusing to give said ·instruction the judgment is reversed, and the cause is remanded for a new trial.